Case 3:24-cv-00084   Document 73   Filed on 02/18/25 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
February 18, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PABTEX, INC., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:24-cv-00084 |
| | § | |
| M/V ARUNA CENGIZ, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before me is a Motion to Transfer Venue filed by Third-Party Defendants Eaglestar Shipmanagement S Pte. Ltd. and AET MCV Gamma LLC. *See* Dkt. 52. Eaglestar and AET (collectively, "Third-Party Defendants") seek to have this case transferred to the United States District Court for the Eastern District of Texas, Beaumont Division. For the reasons outlined below, I grant the motion.[1]

## BACKGROUND

Pabtex, Inc. owns a dock and ship-loading equipment located on the bank of the Sabine River in Port Arthur, Texas. On March 18, 2024, the M/V ARUNA CENGIZ was at Pabtex's dock for loading operations. Pabtex alleges that the M/V ARUNA CENGIZ's crew failed to properly secure and control the vessel, causing "the M/V ARUNA CENGIZ to contact Pabtex's ship loader resulting in catastrophic damages to the equipment and supporting structures." Dkt. 48 at 3. Pabtex brings maritime negligence claims against Star Maritime Inc. and Aruna Shipping Ltd. Corp. (collectively, "the Aruna Defendants"), the entities that allegedly "owned,

---

[1] An order transferring venue pursuant to 28 U.S.C. § 1404(a) is a non-dispositive matter for which a magistrate judge may issue an Opinion and Order. *See Arena IP, LLC v. New Eng. Patriots, LLC*, No. 4:23-cv-00428, 2023 WL 8711081, at *1 n.1 (S.D. Tex. Nov. 20, 2023) (explaining why "the better view" is that an order transferring venue is not dispositive under 28 U.S.C. § 1404(a)).

operated, chartered or otherwise controlled" the M/V ARUNA CENGIZ. *Id.* at 2. Pabtex also asserts an unseaworthiness claim against the M/V ARUNA CENGIZ.

The Aruna Defendants have filed a third-party complaint against the M/T EAGLE LOUISIANA, Eaglestar, and AET. *See* Dkt. 35. At all relevant times, Eaglestar operated the M/T EAGLE LOUISIANA, and AET owned the vessel. The Aruna Defendants allege that the M/T EAGLE LOUISIANA

> caused the current, swell, surge, or other hydrodynamic occurrence or effect, which impacted the moored [M/V ARUNA CENGIZ] and caused or contributed to the [M/V ARUNA CENGIZ]'s movement at berth and/or her breaking of her mooring lines and the alleged resulting contact with the Pabtex ship loader and the dock.

*Id.* at 5. The operative third-party complaint includes claims for contribution and indemnity as well as maritime negligence.

It is undisputed that all the events forming the basis of this lawsuit occurred in Port Arthur, Texas, which is located in the Beaumont Division of the Eastern District of Texas. The allision between the M/V ARUNA CENGIZ and Pabtex's ship loader took place in navigable waters and the various vessels allegedly at fault were all located in Port Arthur at the time of the incident. This case was only filed in the Galveston Division of the Southern District of Texas because, at the time of filing, Pabtex believed the M/V ARUNA CENGIZ was within the jurisdiction of the Southern District of Texas and sought to arrest it in Galveston Bay.[2]

Third-Party Defendants have moved to transfer this matter under 28 U.S.C. § 1404(a) "to the Beaumont Division of the Eastern District of Texas for the convenience of the parties and witnesses and/or in the interest of justice." Dkt. 52 at 2. Pabtex has no objection to this case being transferred to the Beaumont Division of the Eastern District of Texas. The Aruna Defendants, however, oppose transfer for two independent reasons. First, they argue that Third-Party Defendants do not have the right to seek a venue transfer under § 1404(a). Second,

---

[2] The M/V ARUNA CENGIZ apparently left the Southern District of Texas before an arrest could occur.

they insist that Third-Party Defendants have failed to demonstrate that the Beaumont Division of the Eastern District of Texas is clearly more convenient than the Southern District of Texas.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). District courts enjoy "broad discretion in deciding whether to order a transfer" under § 1404(a). *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) ("*Volkswagen II*") (quotation omitted).

When, as here, the lawsuit could have been filed in the district to which transfer is sought, the court must consider several public and private factors relating to the convenience of parties and witnesses, "none of which are given dispositive weight." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors concern: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law." *Id*.

A motion to transfer venue pursuant to § 1404(a) should be granted if "the movant demonstrates that the transferee venue is clearly more convenient." *Volkswagen II*, 545 F.3d at 315; *see also Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) ("[T]he standard [for a § 1404(a) transfer] is not met by showing one forum is more likely than not to be more convenient, but

3

instead the party [seeking transfer] must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.").

## ANALYSIS

### A. THIRD-PARTY DEFENDANTS MAY SEEK VENUE TRANSFER UNDER § 1404(a)

As an initial matter, the Aruna Defendants argue that Third-Party Defendants lack standing to move for transfer under § 1404(a). I am not convinced.

As recognized by the Fifth Circuit, a third-party defendant's motion to transfer venue "is atypical." *Gundle Lining Const. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 209 (5th Cir. 1996). This is because "[s]tatutory venue limitations have no application to Rule 14[3] claims even if they would require the third-party action to be heard in another district had it been brought as an independent action." *Id.* (*quoting* CHARLES ALAN WRIGHT ET AL., 6 FED. PRAC. & PROC. CIV. § 1445 (2d ed. 1990)). Stated differently, "if venue is properly laid in the principal action, a third-party defendant impleaded under Rule 14(a) may not successfully raise the defense that venue would be *improper* in an original action by the third-party plaintiff against the third-party defendant." *Odette v. Shearson, Hammill & Co.*, 394 F. Supp. 946, 951 (S.D.N.Y. 1975) (emphasis added). "The third-party defendant is protected against an inconvenient forum by the requirement that the court have personal jurisdiction over him and the court's ability to take account of venue considerations when exercising its discretion to decide whether to disallow impleader or to sever the third-party claim." *Gundle*, 85 F.3d at 210 (cleaned up).

Although "third-party defendants have no standing to raise a defense that venue is improper, any party, even the court *sua sponte*, can move for transfer of an action under 28 U.S.C. 1404(a), because a motion for transfer is not a defense

---

[3] Federal Rule of Civil Procedure 14(a)(1) provides that a defendant may implead "a nonparty who is or may be liable to it for all or part of the claim against it."

4

that venue is improper." *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 828–29 (E.D. Va. 2004) (cleaned up); *see also Stronghold Sec. LLC v. Sectek, Inc.*, 582 F. Supp. 2d 726, 728 (D. Md. 2008) (Third-party defendants "may . . . seek a transfer of an action under 28 U.S.C. § 1404(a), because a motion to transfer is not a defense that venue is improper."); *Aurora Healthcare, Inc. v. CodoniX, Inc.*, No. 03-C-0612, 2005 WL 8147515, at *3 (E.D. Wis. July 29, 2005) ("Third-party defendants do not have standing to object to venue, but requesting a transfer of venue under 28 U.S.C. § 1404(a) is an entirely different thing."). There is no conceivable reason to preclude a third-party defendant from seeking a transfer of venue under § 1404(a) for the convenience of the parties and witnesses. Section 1404(a) "is silent on the issue of who may move for transfer" and "[i]t defies logic to consider the convenience of the plaintiff, the defendant, and any non-party witnesses, but not the convenience of the third-party defendants." *Nalco Co. v. Env't Mgmt., Inc.*, 694 F. Supp. 2d 994, 996–97 (N.D. Ill. 2010); *see also Daily Exp., Inc. v. N. Neck Transfer Corp.*, 483 F. Supp. 916, 918 (M.D. Pa. 1979) ("If the purpose of [§] 1404(a) is to allow the Court to consider which would be the more convenient forum for the parties and witnesses, a Third-Party Defendant should not be barred from requesting a review of the choice of forum.").[4]

The overwhelming majority of district courts to consider the issue have held that third-party defendants may move to transfer venue under § 1404(a). *See, e.g.*, *NCO Fin. Sys., Inc. v. Gen. Bar, Inc.*, No. 1:9-cv-2653, 2011 WL 3490114, at *3 (N.D. Ohio Aug. 10, 2011); *Nalco Co.*, 694 F. Supp. 2d at 996–97; *Stronghold Sec. LLC*, 582 F. Supp. 2d at 728; *Aurora Healthcare, Inc.*, 2005 WL 8147515, at **3–

---

[4] Lawyers and judges frequently conflate the terms "venue" and "forum." But they are not interchangeable. "Forum" refers to "a place of jurisdiction," like federal court or state court. *Rainbow Int'l LLC v. Scruggs*, No. W:15-cv-162, 2015 WL 11622491, at *2 n.2 (W.D. Tex. Dec. 14, 2015) (quotation omitted). "Venue," on the other hand, refers to the place "over which a trial court has jurisdiction." *Id.* In other words, whether this suit changes *venue* from the Southern District of Texas to the Eastern District of Texas, the *forum*— federal district court—will remain the same.

4; *One Beacon Ins. Co.*, 312 F. Supp. 2d at 828–29; *Kendall U.S.A., Inc. v. Cent. Printing Co.*, 666 F. Supp. 1264, 1267 (N.D. Ind. 1987); *Krupp Intern., Inc. v. Yarn Indus., Inc.*, 615 F. Supp. 1103, 1107 (D. Del. 1985); *Daily Exp. Inc.*, 483 F. Supp. at 918. I find the reasoning in these cases persuasive, and likewise conclude that third-party defendants have standing to ask a district court to exercise its discretion to transfer venue pursuant to § 1404(a).

Third-Party Defendants suggest that the Fifth Circuit's *Gundle* opinion prohibits a district court from performing a § 1404(a) analysis. I disagree. *See Intel Corp. v. Negotiated Data Sols., Inc.*, No. 2:08-cv-319, 2012 WL 12895363, at *3 (E.D. Tex. Apr. 25, 2012) ("The Court is not convinced that the reasoning in *Gundle* prohibits the Court from conducting an analysis under 28 U.S.C. § 1404(a)."). *Gundle* stands for the limited proposition that a third-party defendant may not *object* to venue. "Objecting to venue is quite different from requesting that the Court make a discretionary transfer of venue" under § 1404(a). *Aurora Healthcare, Inc.*, 2005 WL 8147515, at *3.

One final observation: Even if Third-Party Defendants lacked standing to seek a § 1404(a) transfer, it is well-established that § 1404(a) "transfers may be made *sua sponte*" by district courts. *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989); *see also Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988) (holding that district court may *sua sponte* transfer venue pursuant to § 1404(a)). My authority under § 1404(a) to *sua sponte* transfer this case provides an independent basis for my ultimate decision to transfer this case to the Beaumont Division of the Eastern District of Texas.

**B.   THE EASTERN DISTRICT OF TEXAS IS CLEARLY A MORE CONVENIENT FORUM**

Having decided that Third-Party Defendants have standing to seek transfer of this case pursuant to § 1404(a), I must now determine whether transfer is appropriate. To do so, I focus on the four private interest factors and the four public interest factors.

### 1. *The Private Interest Factors*

#### a. Relative Ease of Access to Sources of Proof

"The first private interest factor focuses on the location of the relevant documents and physical evidence relative to the transferee and transferor venues." *In re Orion Marine Constr., Inc.*, No. 3:20-cv-00309, 2020 WL 8083679, at *3 (S.D. Tex. Dec. 21, 2020) (cleaned up). The Aruna Defendants emphasize that they and Third-Party Defendants are "all foreign entities or vessels in international commerce (with international crew)." Dkt. 55 at 6–7. Fair enough, but the Aruna Defendants conveniently ignore that the Eastern District of Texas unquestionably "has greater access to the physical evidence—including the [Pabtex facility] where the accident occurred—than the Galveston Division." *Orion Marine*, 2020 WL 8083679, at *4. This should hardly come as a surprise because the Eastern District of Texas is the locale of the accident. Galveston, on the other hand, has no connection whatsoever to the underlying incident. Thus, no assertion has been made that *any* documents or physical evidence may be found in Galveston, or anywhere in the Southern District of Texas. This factor favors transfer to the Eastern District of Texas.

#### b. Availability of Compulsory Process to Secure the Attendance of Non-Party Witnesses

"The second private interest factor examines the availability of compulsory process over witnesses." *Id*. The Federal Rules of Civil Procedure provide district courts with the authority to compel non-party witnesses "to attend a trial, hearing, or deposition" that is conducted "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(A). "This factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *E. Tex. Boot Co., LLC v. Nike*, No. 2:16-cv-0290, 2017 WL 2859065, at *3 (E.D. Tex. Feb. 15, 2017) (quotation omitted).

At the conclusion of a recent hearing, I asked the parties to submit letters identifying those witnesses expected to testify at trial and where the witnesses could be located. *See* Dkt. 64. Those submissions reveal that there are numerous third-party witnesses that reside, work, or regularly transact business in the Eastern District of Texas. These potential witnesses include the pilots aboard the M/V ARUNA CENGIZ at the time of the incident in dispute, individuals involved in post-accident repairs to the Pabtex facility, and employees of Savage Services Corp., the operator of the Pabtex terminal. Although it appears that the non-party witnesses who reside, work, or regularly transact business in the Eastern District of Texas are (just barely) within 100 miles of the historic Galveston federal courthouse as the crow flies,[5] it would be difficult for these individuals to make the trek from the Beaumont-Port Arthur area to Galveston, a distance that unquestionably exceeds 100 driving miles and involves heavy traffic around the Houston area. Importantly, not a single non-party witness has been identified who resides, works, or regularly transacts business in the Southern District of Texas, much less the Galveston Division. All told, this factor slightly favors transfer.

    **c.**  **Cost of Attendance for Willing Witnesses**

"The third private interest factor, which is probably the single most important factor in the transfer analysis, considers the cost of attendance for willing witnesses." *Orion Marine*, 2020 WL 8083679, at *4 (quotation omitted). "Employees of a party or witnesses that a party otherwise controls are often willing witnesses in effect because compulsory process is not necessary to ensure that these witnesses attend trial." *Roberts v. Paris Reg'l Med. Ctr.*, No. 2:18-cv-00191, 2018 WL 4221861, at *4 (E.D. Tex. Sept. 5, 2018). As one district court explained: "The inconvenience to witnesses increases with the additional distance to be traveled, including additional travel time, meal, lodging expenses, and time away

---

[5] "[T]he 100 mile radius in Rule 45 is measured in a straight line, *i.e.,* 'as the crow flies,' and not by the usual driving route." *Universitas Educ., LLC v. Nova Grp., Inc.,* No. 11 Civ. 1590, 2013 WL 57892, at *2 (S.D.N.Y. Jan. 4, 2013) (collecting cases).

8

from their regular employment. The Court must also consider the personal costs associated with being away from work, family, and community." *Sandbox Logistics LLC v. Grit Energy Sols. LLC*, No. 3:16-cv-12, 2016 WL 4400312, at *5 (S.D. Tex. Aug. 17, 2016) (cleaned up).

The potential willing witnesses in this case fall into several buckets. First, there are the crew members who worked on the vessels allegedly involved in this incident. For the most part, the crew members live outside the United States. To attend trial (whether it takes place in the Beaumont Division of the Eastern District of Texas or the Galveston Division of the Southern District of Texas), these crew members would likely have to fly into George Bush Intercontinental Airport in Houston, which is roughly equidistant from the Beaumont federal courthouse and the Galveston federal courthouse in terms of actual travel time. The convenience to the crew members is neutral.

The second batch of willing witnesses includes several Pabtex employees who live and work in the Kansas City, Missouri area. For these gentlemen, trial in Beaumont or Galveston makes no real difference in terms of convenience.

The third group of willing witnesses includes various surveyors who work in Houston, Louisiana, and Port Arthur. Although I cannot tell for certain, it appears as if these surveyors are expert witnesses selected by the parties. It is well-settled that the convenience of expert witnesses is entitled to little or no weight when considering a transfer under § 1404(a). *See Houston Trial Reps., Inc. v. LRP Publ'ns, Inc.*, 85 F. Supp. 2d 663, 669 (S.D. Tex. 1999) ("The convenience of expert witnesses weighs little in the [§ 1404(a)] analysis.").[6]

Although it is telling that not a single willing witness is located in the Galveston Division of the Southern District of Texas, I am also not aware of a single

---

[6] The parties spill much ink identifying where depositions of certain witnesses are expected to take place. To be clear, the locale of depositions is irrelevant to the § 1404(a) analysis. Similarly, the "'location of counsel' is irrelevant and improper for consideration" of a § 1404(a) motion. *In re Horseshoe Ent.*, 337 F.3d 429, 434 (5th Cir. 2003).

willing witness—other than expert witnesses retained by the parties—who lives or works in the Eastern District of Texas. All in all, this factor is neutral.

### d. Other Practical Problems

The fourth private interest factor district courts should consider in deciding a § 1404(a) motion to transfer is "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203. The Fifth Circuit has clarified that "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer." *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013). No party makes any argument as to why this factor impacts the transfer analysis. Accordingly, I accord this factor no weight. It is neutral.

### 2. *The Public Interest Factors*

#### a. Administrative Difficulties Flowing From Court Congestion

The first public-interest factor asks "not whether transfer will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Hillestad v. LLOG Expl. Co.*, No. 3:17-cv-00341, 2018 WL 4938708, at *7 (S.D. Tex. Sept. 20, 2018) (cleaned up). According to the most recent statistics available, the median time from filing to disposition of civil cases is 7.8 months in the Eastern District of Texas and 7.6 months in the Southern District of Texas.[7] Because the difference is negligible, this factor is neutral.

#### b. Local Interest in Having Localized Disputes Decided at Home

"This public interest factor considers whether the dispute at issue has a closer 'factual connection' with the transferee or the transferor venue." *Orion Marine*, 2020 WL 8083679, at *6 (quoting *Volkswagen I*, 371 F.3d at 206); *see also Def. Distributed*, 30 F.4th at 435 ("The second public interest factor . . . most

---

[7] U.S. COURTS, FEDERAL JUDICIAL CASELOAD STATISTICS, MEDIAN TIME FROM FILING TO DISPOSITION OF CIVIL CASES, BY ACTION TAKEN, TABLE C-5 (Mar. 31, 2024), https://www.uscourts.gov/sites/default/files/data_tables/fjcs_c5_0331.2024.xlsx.

notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit." (quotation omitted)). "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Orion Marine*, 2020 WL 8083679, at *6 (quotation omitted). "Indeed, the place of the alleged wrong is one of the most important factors in venue determinations." *Def. Distributed*, 30 F.4th at 435 (cleaned up).

I find it quite significant that this lawsuit has zero connection to the Galveston Division of the Southern District of Texas. This case was filed in Galveston only because Pabtex wanted to arrest the M/V ARUNA CENGIZ, but the vessel left the jurisdiction before the arrest could be effectuated. The Aruna Defendants readily acknowledge that all "the events giving rise to the claims asserted in Pabtex's Complaint and the . . . Third-Party Complaint occurred in the Eastern District of Texas." Dkt. 55 at 6. Thus, the Eastern District of Texas has a strong, local interest in deciding this case. To borrow my words from another § 1404(a) transfer case: "It is easily understandable why the residents of the [Beaumont] Division [of the Eastern District of Texas] would have a genuine, localized interest in hearing a dispute concerning a [local maritime accident]." *Orion Marine*, 2020 WL 8083679, at *6. The fact that Pabtex is based in the Eastern District of Texas only further drives this point home.

I am hard-pressed to understand why residents of the four counties comprising the Galveston Division—Brazoria County, Chambers County, Galveston County, and Matagorda County—have any interest in hearing this case. The incident in dispute did not occur in the Southern District of Texas, and none of the witnesses in this matter are located in the Southern District of Texas. Although we in the Galveston Division are welcoming, I am hesitant to impose on the citizens of this district the obligation to participate in a jury trial when this

matter belongs elsewhere.[8] *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947) ("Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation"). Because all the events forming the basis of this suit occurred in the Eastern District of Texas, this factor heavily favors transfer. *See Polaris Eng'g, Inc. v. Tex. Int'l Terminals, Ltd.*, No. H-20-3389, 2021 WL 5155691, at *14 (S.D. Tex. Apr. 16, 2021) (finding transfer appropriate when "most every operative fact at issue occurred in the" proposed transferee forum (quotation omitted)).

   **c. Familiarity of the Forum with the Law that Will Govern the Case**

This case involves the application of maritime law, an area with which judges in both the Eastern District of Texas and the Southern District of Texas are quite familiar. Accordingly, this factor is neutral.

   **d. Avoidance of Conflict of Laws or Application of Foreign Law**

The final public interest factor asks whether transferring the case would raise any "unnecessary problems in conflict of laws, or in the application of foreign law." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016) (quotation omitted). I agree with the parties that this factor is neutral because both the Eastern District and Southern District are equally capable of addressing any conflict of law or foreign law issues that may arise.

## CONCLUSION

On balance, I find that the private and public factors weigh in favor of transferring this case to the Beaumont Division of the Eastern District of Texas. As explained, three of the factors favor transfer (one strongly), five are neutral, and none favor retaining this case in the Galveston Division. I see no credible reason

---

[8] Accordingly, Rule 16 of the Galveston Division Rules of Practice states that this court will entertain § 1404(a) motions to transfer cases with no factual nexus to the Galveston Division. *See* GALVESTON DIVISION RULES OF PRACTICE at 6 (Jun. 4, 2024), https://www.txs.uscourts.gov/sites/txs/files/GalvestonDistrictCourtRulesofPractice.pdf.

why the Galveston Division should keep this case on its docket when, quite literally, all the events giving rise to the incident at issue took place in the Eastern District of Texas, and the matter has no connection to the Galveston Division. I conclude that Third-Party Defendants have satisfied their burden of establishing that the Beaumont Division of the Eastern District of Texas is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315.

Accordingly, Third-Party Defendants' Motion to Transfer Venue (Dkt. 52) is **GRANTED**. Pursuant to 28 U.S.C. § 1404(a), this case is **TRANSFERRED** to the United States District Court for the Eastern District of Texas, Beaumont Division.

SIGNED this 18th day of February 2025.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE